IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH J. ROSENBAUM,       )    CIVIL NO. 18-00263 HG-RT
                                )
              Plaintiff,   )
                                )
        vs.              )
                                )
ANDREW SAUL, Commissioner of  )
Social Security,          )
                                )
              Defendant.   )
                                )

**ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER**

This case involves the appeal by Plaintiff Joseph J.
Rosenbaum of the Social Security Administration Commissioner's
denial of Disability Insurance Benefits and Supplemental Security
Income.

Plaintiff was born in January 1971. Plaintiff claims to
have been disabled since January 2, 2008, when he was 36 years
old. Plaintiff asserts that he is disabled due to both physical
and mental impairments. Plaintiff has the following impairments:
diabetes, joint disease, hip replacement, depression, bipolar
disorder, a personality disorder, and a substance abuse disorder.

Plaintiff first submitted applications for Social Security
benefits on April 3, 2008.

Following the initial denial of his applications and a
denial of reconsideration, Plaintiff had a hearing before an
Administrative Law Judge. On September 24, 2012, the

Administrative Law Judge issued a written decision denying Plaintiff's applications, which was affirmed by the Appeals Council.

On January 27, 2014, Plaintiff sought judicial review of the agency's denial of his applications. Pursuant to a stipulation by the parties, the United States District Court for the Central District of Illinois issued an Order remanding proceedings to the agency.

Upon remand by the Central Illinois District Court, the Appeals Council remanded proceedings to the same Administrative Law Judge to conduct a second hearing on Plaintiff's applications.

Following the second hearing, on December 10, 2015, the Administrative Law Judge issued a second written decision denying Plaintiff's applications. The Appeals Council, once again, affirmed the Administrative Law Judge.

On September 27, 2016, Plaintiff, again, sought judicial review of the agency's decision denying his applications. Pursuant to a second stipulation by the parties, the United States District Court for the Central District of Illinois issued a Second Order remanding proceedings to the agency.

Upon the second remand by the Central District of Illinois, the Appeals Council remanded proceedings to a different Administrative Law Judge.

Plaintiff had a third hearing before a new Administrative Law Judge on December 13, 2017.

On March 9, 2018, Plaintiff's applications for Social
Security benefits were denied for a third time.  The Appeals
Council affirmed.

Between March 9, 2018 and July 6, 2018, Plaintiff relocated
from Champaign, Illinois to Mountain View, Hawaii.

Plaintiff appealed the third denial of his request for
Supplemental Security Income and Disability Insurance benefits to
this Court.

The Court **AFFIRMS** the decision of the Social Security
Administration Commissioner.

## PROCEDURAL HISTORY

On April 3, 2008, Plaintiff Joseph J. Rosenbaum filed
applications for Disability Insurance Benefits and Supplemental
Security Income Benefits with the Social Security Administration.
(Administrative Record ("AR") at pp. 144-53, ECF Nos. 21, 22).

On July 30, 2008, the Social Security Administration denied
Plaintiff's initial applications.  (AR at pp. 81-85).

On October 30, 2008, the Administration denied his request
for reconsideration.  (AR at pp. 86-95).

On August 12, 2010, Plaintiff filed updated applications for
Disability Insurance Benefits and Supplemental Security Income.
(AR at pp. 156-66).

On December 1, 2010, the Social Security Administration
denied Plaintiff's updated applications.  (AR at pp. 96-105).

On April 19, 2011, the Administration denied his request for

reconsideration.  (AR at pp. 106-09).

On August 14, 2012, an Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's applications.  (AR at pp. 19-47).

On September 24, 2012, an ALJ issued a written decision denying Plaintiff's applications.  (AR at pp. 59-73).

Plaintiff sought review by the Appeals Council for the Social Security Administration.  The Appeals Council denied further review of Plaintiff's application on October 31, 2013, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (AR at pp. 5-11).

On January 27, 2014, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny his applications for Disability Benefits and Supplemental Security Income in the United States District Court for the Central District of Illinois pursuant to 42 U.S.C. § 405(g).  (AR at pp. 832-33, 2:14-cv-02009 HAB-DGB).

On July 15, 2014, the Central Illinois District Court issued an order entitled, "Order Granting Stipulation For Remand Under Sentence Four Of 42 U.S.C. § 405(g)."  (AR at pp. 834-35).

On September 18, 2014, the Appeals Council remanded proceedings to an ALJ.  (AR at pp. 842-43).

On September 3, 2015, an ALJ conducted a second hearing on Plaintiff's applications.  (AR at pp. 781-817).

On December 10, 2015, an ALJ issued a second written decision denying Plaintiff's applications.  (AR at pp. 749-68).

Plaintiff sought review by the Appeals Council for the Social Security Administration. The Appeals Council denied further review of Plaintiff's application on July 29, 2016, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security. (AR at pp. 742-45).

On September 27, 2016, Plaintiff again sought judicial review of the Commissioner of Social Security's final decision to deny his applications for Disability Benefits and Supplemental Security Income in the United States District Court for the Central District of Illinois pursuant to 42 U.S.C. § 405(g). (AR at pp. 1573-75, 2:16-cv-02296 CSB-EIL).

On June 8, 2017, the Central Illinois District Court issued an Order remanding proceedings to the Agency pursuant to a stipulation by the Parties. (AR at p. 1577).

On July 17, 2017, the Appeals Council remanded proceedings to an Administrative Law Judge. (AR at pp. 1580-82).

On December 13, 2017, an ALJ conducted a third hearing on Plaintiff's applications. (AR at pp. 1462-1512).

On March 9, 2018, an ALJ issued a written decision denying Plaintiff's applications. (AR at pp. 1414-46).

Plaintiff sought review by the Appeals Council for the Social Security Administration. The Appeals Council denied further review of Plaintiff's application on March 9, 2018, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security. (AR at pp. 1411-13).

Plaintiff then relocated from Champaign, Illinois to

Mountain View, Hawaii.

On July 6, 2018, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny his applications for Disability Benefits and Supplemental Security Income in this Court pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

On October 8, 2018, Plaintiff filed a Motion for Extension Of Time To File/Complete Service. (ECF No. 14).

On October 10, 2018, Plaintiff's Motion for Extension Of Time was granted. (ECF No. 15).

On December 18, 2018, the Magistrate Judge issued a briefing schedule. (ECF No. 24).

On February 15, 2019, Plaintiff's counsel made a request for an extension of the briefing schedule, which was granted. (ECF No. 27).

On February 22, 2019, Plaintiff mis-filed his Opening Brief as a Motion for Summary Judgment, which was withdrawn. (ECF Nos. 28, 29, 30, 31).

On March 1, 2019, Plaintiff filed PLAINTIFF'S OPENING BRIEF IN A SOCIAL SECURITY CASE. (ECF No. 32).

On March 4, 2019, Defendant filed a letter requesting a continuance of the hearing date. (ECF No. 33).

On the same date, the Court granted Defendant's request for a continuance of the hearing date. (ECF No. 34).

On April 16, 2019, Defendant filed the DEFENDANT'S ANSWERING BRIEF. (ECF No. 35).

On April 29, 2019, Plaintiff filed a Motion to Appear At The Hearing Telephonically, which was granted.  (ECF Nos. 36, 37).

On May 23, 2019, Plaintiff filed PLAINTIFF'S REPLY TO DEFENDANT'S ANSWERING BRIEF.  (ECF No. 39).

On June 10, 2019, Defendant filed a letter requesting a continuance of the hearing date.  (ECF No. 42).

On the same date, the Court granted Defendant's request for a continuance of the hearing date.  (ECF No. 43).

On June 24, 2019, the Court issued a Minute Order continuing the hearing.  (ECF No. 44).

On September 3, 2019, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.  (ECF No. 45).

## **BACKGROUND**

### **Plaintiff's Work History**

Plaintiff is a 48 year-old male.  (Administrative Record ("AR") at pp. 1444, 1487, ECF Nos. 21-22).

Plaintiff received his GED and completed one year of college courses in computer science.  (AR at pp. 1469-70).

Plaintiff did not provide a complete record of his employment history to the agency.  Plaintiff did not list the dates of employment for most of his work on his applications for benefits.  The Administrative Law Judge specifically questioned Plaintiff about the lack of information provided concerning his work history.  Plaintiff testified that he has had more than 100

jobs in his life, and that he does not remember specific dates. He stated that he has not applied for a full-time job in more than 10 years but explained that he did perform seasonal work. (AR at pp. 1486, 1489-90). Plaintiff testified that he regularly quits jobs due to anxiety and stress, but stated that he has also been fired from work on occasion. (AR at p. 1474).

According to records documenting Plaintiff's contributions to the Social Security Administration through his employment history, the last significant employment Plaintiff had was in 2004 when he made $4,000 that calendar year. (AR at p. 1473). Between 2004 and 2008, Plaintiff worked for short periods of time at a liquor store, at a restaurant, as a front-desk clerk at hotels, as a temporary worker at a college, and as a laborer for a temp agency. (AR at pp. 1504-05). Plaintiff was unable to recall the last time he had full-time employment aside from his occasional, seasonal work. (AR at p. 1472).

Plaintiff claims his onset date of disability is January 2, 2008. (AR at p. 1417).

Following his alleged onset date of disability, Plaintiff worked seasonally as a bell ringer for the Salvation Army in the years 2010-2014. (Id.)

**Plaintiff's Medical History**

**Physical Impairments**

Plaintiff was diagnosed with diabetes mellitus in 2010. (AR at p. 1418). Plaintiff has been taking medication to control the

symptoms of his diabetes up through 2017.  (AR at pp. 1418-19).

Plaintiff has been treated for hypothyrodism since 2003.
(AR at p. 1419).  Plaintiff reported that he was diagnosed with
hypothyroidism when he was 18.  Plaintiff has been taking
medication to control the symptoms of that condition.  (AR at p.
1419).

At age 16, in 1987, Plaintiff had a separation of his right
hip and had it pinned.  (AR at p. 1419).  Plaintiff continued to
experience pain in his right hip and in March 2004, Plaintiff
underwent a total hip arthroplasty.  (AR at p. 1419).  By June
2004, three months after hip replacement, Plaintiff was walking
with only a slight limp and no pain.  (AR at p. 1419).

Plaintiff was diagnosed with plantar fasciitis in 2013.  (AR
at p. 1425).  Plaintiff's physician recommended conservative
treatment, including proper shoe gear, over-the-counter
orthotics, and home exercises to treat the plantar fasciitis
pain.  (AR at p. 1425).

In 2017, Plaintiff underwent bilateral carpal tunnel release
surgery to relieve numbness and tingling in his hands and
forearms.  (AR at p. 1426).  Plaintiff's physician reported that
the issues had resolved following surgery.  Plaintiff had no
restrictions on grip strength and had normal ability to grasp and
manipulate objects.  (AR at p. 1426).

Plaintiff was diagnosed with hypertension in 2012.  (AR at
p. 1426).  By 2013, his blood pressure levels were repeatedly
reported to be stable.  (AR at p. 1426).

Plaintiff is 6'1" and weighed 269 pounds as of 2017, placing him in the obesity range on the body-mass index. (AR at p. 1427). During the period the claims have been pending, Plaintiff has weighed as much as 289 and as low as 221 pounds. (Id.)

**Mental Impairments**

In 2008, Plaintiff was diagnosed with a major depressive and poly-substance dependence disorders. (AR at p. 1436). At the hearing before the Administrative Law Judge in 2017, Plaintiff testified that he feels that he needs to use cannabis every day but claims that he only smokes it twice a week when it is provided to him by friends. (AR at pp. 1490-92).

In 2009, Plaintiff was diagnosed with bipolar disorder by Dr. Gerald M. Welch, M.D. (AR at pp. 567, 574, 633). Plaintiff was prescribed Wellbutrin, Epitol, and Lamictal to help treat his depression and bipolar disorder. (AR at pp. 566-76, 1439-40). His medical records report marked improvement in his depression and mood when Plaintiff consistently takes his prescribed medications. (AR at pp. 1437-44).

Reports from Plaintiff's treating physicians indicate that Plaintiff has moderate mental impairments with limitations in understanding, remembering, and applying information. (AR at p. 1432). Plaintiff has some difficulty with auditory processing and some deficits in delayed recall, but his immediate recall ability is very good. (AR at p. 1432).

Plaintiff has been found to have a moderate limitation in

interacting with others.  (AR at p. 1432-33).  Plaintiff has been
found to have instances of irritability and agitation when
interacting with others, but he is able to engage in activities
of daily living requiring social interaction such as traveling by
bus, scheduling doctors' appointments, and shopping in stores.
(AR at pp. 1432-33).

**The Social Security Administration's Third Administrative Review
of Plaintiff's Applications For Supplemental Security Income and
Disability Benefits**

Following two stipulated remands by the United States
District Court for the Central District of Illinois to the
agency, Plaintiff's applications for Social Security
Administration Supplemental Security Income and Disability
Insurance Benefits were remanded by the Appeals Council to an
Administrative Law Judge ("ALJ") on July 17, 2017.  (AR at pp.
1580-82).

The ALJ was specifically instructed to give proper
consideration to the treating and non-treating source opinions
and the non-examination source opinions in the record.  The ALJ
was also instructed to evaluate the Plaintiff's mental
impairments and his residual functional capacity with support
from the record.  The Appeals Council remanded proceedings to the
ALJ on an open record.  The Appeal Council directed that the case
be assigned to a different ALJ on remand.  (AR at p. 1582).

On December 13, 2017, a hearing on Plaintiff's application
for Social Security Administration Disability Benefits was held

before an ALJ.  (AR at pp. 1462-1512).  For the third time, an
ALJ denied Plaintiff's application for Supplemental Security
Income and Disability Insurance Benefits.  (AR at pp. 1414-46).

Plaintiff claimed that he was disabled for a continuous
period following January 2, 2008, due to diabetes, joint disease,
hip replacement, depression, bipolar disorder, a personality
disorder, and a substance abuse disorder.  (AR at p. 1417).  He
also claimed additional physical ailments including plantar
fasciitis, high blood pressure, and hypothyroidism.  (AR at.
1418-31).

The ALJ found that Plaintiff did not have an impairment or
combination of impairments that meets or medically equals the
severity of one of the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525,
404.1526, 416.920(d), 416.925, and 416.926.  (AR at p. 1431).

The ALJ determined that Plaintiff could perform a full range
of work with some non-exertional limitations.  (AR at p. 1435).
The ALJ considered that Plaintiff was 36 years old on the alleged
disability onset date, has no past work experience, has a high
school education, and is able to communicate in English.  (AR at
pp. 1444-45).

The ALJ found that there was work that existed in
significant numbers in the economy that Plaintiff could perform.
(AR at p. 1445).  The Administrative Law Judge relied on the
testimony of a vocational expert to find that someone with
Plaintiff's residual functional capacity could perform work as a

housekeeping cleaner, a conveyor line bakery worker, and a racker.  (Id.)

    Plaintiff sought, once again, review of the Administrative Law Judge's decision with the Appeals Council.  The Appeals Council declined Plaintiff's request for review and rendered the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (Id. at pp. 1411-13).

## STANDARD OF REVIEW

    A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

    A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

**I.  Plaintiff's Work History Prior to His Alleged Onset Date of Disability on January 2, 2008**

Plaintiff has presented no full-time work history for at least the last fifteen years.  (AR at pp. 1486, 1489-90). Between 2004 and 2008, Plaintiff worked temporary jobs as a store and hotel clerk and as a laborer.  (AR at pp. 1504-05). Plaintiff testified that he has had over 100 jobs in his life but does not remember the last time he had a full-time job.  (AR at p. 1472).

Plaintiff testified that he has not applied for a full-time job in more than ten years, but stated he had worked in part-time, seasonal jobs.  He explained that he normally quits jobs because he gets frustrated but he has also been fired from positions.  (AR at p. 1474).

Plaintiff claims that he became disabled at age 36 on January 2, 2008.  Following his alleged onset date of disability, Plaintiff had a seasonal job as a bell-ringer for the Salvation Army from 2010-2014, and he earned over $1,000 during each of the 2010 and 2011 holiday seasons.  (AR at p. 1417).

Plaintiff testified that he had not had a consistent address since 2003.  (AR at p. 1466).  He explained, "I live sporadically.  I've lived in shelters.  I've lived in different friends' houses.  Like I don't have a – I haven't had a stable living arrangement for a long time."  (AR at p. 1466).

Plaintiff applied for benefits while living in central

Illinois.  Plaintiff's medical records indicate that he moved to various locations during the ten year period since he applied for benefits.  He relocated to New Mexico for a short period of time in 2014, then returned to central Illinois in 2015 until 2018.  Following the denial of his application for benefits, Plaintiff moved to the Big Island of Hawaii in 2018.  The record does not provide any information regarding the reasons for Plaintiff's relocation to Hawaii.

## II.  Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382c.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled pursuant to either Disability Benefits or Supplemental Security Income.  The Commissioner of the Social Security Administration reviews a disability claim by evaluating the following:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520; 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## III. The Administrative Law Judge Reviewed Plaintiff's Application By Using The Five-Step Sequential Evaluation

At Plaintiff's December 13, 2017 administrative hearing, the Administrative Law Judge ("ALJ") for the Social Security Administration reviewed Plaintiff's claim by engaging in the five-step sequential evaluation.

The Parties agree there were no errors in the first three steps of the administrative review process.

**At step one**, the ALJ found that Plaintiff was not engaged in substantial gainful activity following January 2, 2008. (AR at p. 1417). The ALJ found that Plaintiff's part-time, seasonal work did not rise to the level of substantial gainful employment. Plaintiff's last day of insured status was March 31, 2013, for Disability Insurance Benefits purposes. (AR at p. 1417).

**At step two**, the ALJ found that the Plaintiff has the following impairments: diabetes, joint disease, hip replacement, depression, bipolar disorder, a personality disorder, and a substance abuse disorder. (AR at pp. 1417-18).

**At step three**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (AR at p. 1431).

**At step four**, the ALJ reviewed the record and made a finding as to Plaintiff's residual functional capacity.

The ALJ found that Plaintiff has the residual functional capacity as follows:

> **[C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to meet the basic mental demands of competitive, remunerative, simple one to two step tasks on a sustained basis, particularly in setting of low social contact with occasional interaction with the public, can understand, remember, and carry-out simple instructions, make judgments commensurate with the functions of simple work-related activities (e.g., simple work-related decisions), respond appropriately to supervision, co-workers, and work situations, and deal with changes in a routine work-setting if introduced gradually, with no more than one day of absence from work per month.**

(AR at p. 1435).

**At step five**, the ALJ asked the vocational expert to evaluate if there were jobs that Plaintiff could perform.

The ALJ found that Plaintiff has no past relevant work pursuant to 20 C.F.R. §§ 404.1565 and 416.965, given that Plaintiff did not have a full-time job for at least the past 15 years. (AR at p. 1444).

The ALJ found that as of January 2, 2008, the alleged onset date of disability, Plaintiff was 36 years old, which is defined as a younger individual age 18-49. Transferability of job skills is not an issue because Plaintiff does not have past relevant work. (AR at pp. 1444-45). The ALJ found that someone with Plaintiff's limitations could perform work as a housekeeping cleaner, a conveyor line bakery worker, or a racker. (AR at p. 1445).

## IV. The ALJ Properly Denied Plaintiff's Application For Supplemental Security Income and Disability Benefits

Plaintiff does not challenge any of the Administrative Law Judge's ("ALJ") findings as to his physical impairments. Plaintiff does not challenge the ALJ's findings that he is not physically limited from performing work, despite Plaintiff's lengthy testimony that he is physically unable to work due to plantar fasciitis, diabetes, obesity, osteoarthritis, bursitis, hypothyroidism, and a number of other alleged ailments.

Nor does Plaintiff challenge the ALJ's residual functional capacity finding that Plaintiff is able to perform a full range of work with no physical, exertional limitations.

Plaintiff's appeal is limited to challenging the ALJ's

findings regarding Plaintiff's limitations related to his mental health issues. Plaintiff argues that the ALJ should have credited his testimony concerning the severity, consistency, and pervasiveness of his symptoms. Plaintiff also argues the ALJ erred in affording little weight to reports from two of his treating physicians in 2011 and 2012.

## A. The ALJ Did Not Err In Declining to Credit Plaintiff's Subjective Symptom Testimony

An individual's statement as to his pain or other symptoms is not necessarily treated as conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a).

The claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An ALJ may discredit the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ made specific, clear and convincing findings to discredit Plaintiff's testimony as to the severity of his symptoms and his claimed inability to work. The ALJ found that

19

Plaintiff's testimony as to the severity of his symptoms was inconsistent with the objective medical evidence in the record. The ALJ also found that Plaintiff's allegations as to the severity of his symptoms was inconsistent with evidence of his participation in daily activities.

### 1. Plaintiff's Testimony Was Inconsistent With Objective Medical Evidence In The Record

The ALJ found that the Plaintiff's credibility regarding the disabling degree of his symptoms was undermined by the objective medical evidence.  20 C.F.R. § 404.1529(c)(2); <u>Garza v. Astrue</u>, 380 Fed. Appx. 672, 673 (9th Cir. 2010) (affirming the ALJ's discrediting of the claimant's testimony as to the severity of her leg pain where the claimant's gait and sensory and motor exams were found to be normal).

The ALJ found that Plaintiff does experience symptoms related to his mental impairments including "an inability to deal with people in a work environment due to anxiousness and irritability, short-term memory problems, racing thoughts, social withdrawal, poor motivation, ease of becoming overwhelmed with even basic tasks, and difficulty concentrating, particularly in the presence of audible distractions."  (AR at p. 1436).

The ALJ found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR at p. 1436).

The ALJ did not agree with Plaintiff's testimony that he could not perform any type of regular work due to his mental health issues. (AR at pp. 1432, 1436-38, 1439-43). The ALJ found that Plaintiff's testimony about the severity of his symptoms was not consistent with the objective medical evidence.

The ALJ reviewed thousands of pages of evidence and extensively cited to documents in the medical reports, filings, and testimony that were inconsistent with Plaintiff's testimony at the December 2017 hearing. The ALJ pointed to records from field office visits between 2008 and 2010 that describe Plaintiff as cooperative and able to answer questions posed to him. (AR at p. 1432). The ALJ relied on Plaintiff's psychological consultative examinations in 2008 documenting that Plaintiff was able to tolerate living in shelters without indication of infractions of social rules. The ALJ also found that the records described that Plaintiff's moods improved when he consistently took his prescribed medications, and followed treatment recommendations. (AR at pp. 377, 383, 386, 396, 398, 400, 457, 462, 506, 508-09, 517, 519-20, 567, 573-75, 640, 648, 697).

The ALJ stated that during Plaintiff's 2010 psychological consultative examination, Plaintiff is described as polite and cooperative to questioning and his behavior and ability to relate during the examination were listed as normal. (AR at pp. 587, 593).

The years following the earlier mental health examination and treatment reflect positive evaluations of Plaintiff's

behavior.  Subsequent treatment notes from 2013 to 2015 state
that Plaintiff was calm and cooperative with normal mood.  (AR at
pp. 710, 716, 728, 1807, 1815, 1818, 1821, 1837, 1840, 1847,
1862, 1867, 1872, 1876, 1914, 1924, 1927).

The ALJ found that although records from 2015 stated that
while Plaintiff sometimes presented as aggressive or
argumentative, he most often interacted in an appropriate and
friendly manner.  (AR at pp. 1805-06, 1823-24, 1860, 1867, 1872-
73, 1876-78, 1889, 1891, 1898, 1900, 1903).

The ALJ also relied on records from the following year, in
2016, stating that Plaintiff was most often cooperative with
normal behavior.  (AR at pp. 1807, 1815, 1818, 1821, 1837, 1840,
1847, 1862).  Records from Plaintiff's treatment by Licensed
Clinical Social Worker Kimberly Kolarik in 2016 found that
Plaintiff was "receptive" and engaged in an "interactive response
to intervention," and that he regularly presented as "open,
friendly" and was focusing on self improvement, making progress,
and building social skills.  (AR at pp. 2056-2142).  While the
records state that Plaintiff had a specific day where he
expressed anger and anxiety, he "was able to see the positive and
actually apologized for his rude and demanding [behavior]".  (AR
at p. 2077).

The ALJ explained that Plaintiff's most recent psychological
consultative examination in June 2017 stated, "while some
difficulties with auditory information processing were noted, the
claimant reported being able to engage in activities of daily

living requiring social interaction such as shopping in stores, he 'answered questions fully and was polite' and 'related well with the examiner.'" (AR at pp. 1433, 2222, 2267, 2289, 2323, 2428, 2430).

The ALJ properly disregarded Plaintiff's testimony that he was unable to perform regular work because of his inability to interact with others. The ALJ relied on numerous records from 2008 through 2017 demonstrating that Plaintiff could be consistently cooperative, polite, and appropriate when interacting with others. Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

The ALJ correctly considered the entire record and determined a residual functional capacity that included appropriate non-exertional limitations based on documented evidence of Plaintiff's issues due to his mental health disorders. The limitations included limited interaction with others in performing regular work. The ALJ did not err in declining to credit Plaintiff's claim that he would never be able to perform regular work due to his mental health.

The ALJ properly cited to specific conflicts between Plaintiff's subjective claims and the objective medical evidence and did not arbitrarily discredit the Plaintiff. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

> **2.  The ALJ Made Specific Findings That Plaintiff's Testimony Was Inconsistent With His Participation in Daily Activities**

The ALJ found that Plaintiff's testimony regarding the severity of his limitations was inconsistent with evidence concerning his participation in daily activities.  (AR at pp. 1433, 1436-44).

An ALJ may properly reject a claimant's testimony about the severity of his disability when it conflicts with his own testimony about his ability to care for his personal needs, cook, clean, shop, manage his finances, and interact with others. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff testified that he was involved in a wide range of daily activities.  Plaintiff testified that he is able to do his own laundry, navigate the public bus system, apply for local government benefits, go grocery shopping, and cook simple meals. (AR at pp. 1466-68).  Despite this testimony that he engages in a number of daily activities, Plaintiff testified that he has not applied for a full-time job in more than ten years because he believes he is unable to perform full-time, regular work.  (AR at p. 1486).  Plaintiff testified as follows:

> ALJ: When was the last time you applied for a job?
>
> Pla: I have no idea.  It's – a regular job?  It's probably been over 10 years or something.
>
> ALJ: Okay.  Why is that?
>
> Pla: After – after about 20 years or more of trying to work and never being able to hold a job, right? And no matter what I do or anything, never being able to have my own apartment or support myself and finding out that I had all these physical and mental issues, I sought treatment, and I took a treatment, and they recommended that I try to go for disability, which I applied like nine years

ago.

> ALJ: I am trying to figure out – so you just decided 10 years ago that you weren't destined to ever work?

> Pla: It's, I mean, yeah, I guess you could say that.

(AR at p. 1486).

The ALJ inquired with Plaintiff about what he does during the day. Plaintiff testified that he engages in a number of different daily activities, and that he regularly smokes marijuana to stabilize his mood in addition to taking his prescribed medications. He testified that he watches videos on the internet, smokes marijuana, reads, and spends time with friends. (AR at pp. 1490-93). Plaintiff testified, as follows:

> ALJ: What do you do during the day?

> Pla: On my good days, you know, I try to do the exercises that the physical therapist wants me to do. I try to DBT, you know, different therapies. I read. I watch videos, make a sandwich, use a bathroom. I mean, I don't know. I don't do a whole lot. Go to appoint–

> ALJ: Are you still smoking marijuana on a regular basis?

> Pla: Yes, ma'am.

> ALJ: Where does the money come from for that?

> Pla: I usually have – friends just – they know my position, just basically smoke with me because they know I really ain't got much money and they understand my situation.

> ALJ: Your friends give you marijuana to smoke on a regular basis?

> Pla: Not that regular. That's – that's sort of the problem because I – I – I – I need it pretty much every day, and I only get it once in a while, so, you know –

ALJ: Why do you need it every day?

Pla: Because it's the only thing that helps with my mood – and it's the only way I can really function at all.

ALJ: Okay. Well, if that's so, and according to this, you smoked about all of your life, and if it helps you function, then why aren't you able to function?

Pla: Okay. What I – what I meant – okay. There's a different thing between functioning, being able to work and things of that nature and just functioning being able to get out of bed without wanting to smash something or being madly depressed or whatever. What I'm talking about is just being to – to interact to some degree and do basic things without freaking out. That's the function I'm talking about. I'm not talking about functional to go to work or, you know, have a relationship or things of that nature.

ALJ: So how often do you smoke marijuana?

Pla: Maybe twice a week if I'm lucky.

ALJ: You never pay for it?

Pla: Rarely.

ALJ: Okay. So it helps you, it helps your mood, and it helps you to be more stabilized?

Pla: Yes, ma'am.

ALJ: But not enough to go apply for a job?

Pla: No, ma'am.

(AR at pp. 1490-92).

The ALJ found Plaintiff's testimony that the severity and persistency of his symptoms prevented him from working was inconsistent with evidence in the record. (AR at pp. 1417, 1436). The ALJ considered that Plaintiff was able to obtain employment as a bell ringer for the Salvation Army. (AR at pp.

1417, 1439).  The record reflects that during the 2010-2011

holiday seasons, Plaintiff worked a number of shifts and was able

to maintain the schedule for work and perform the work

adequately.  (AR at pp. 26, 759, 1417, 1439).  There was no

evidence that Plaintiff's mental limitations interfered with his

ability to perform work as a bell ringer.  (Id.)  The ALJ found

that his work activities, although not full-time, were indicative

that his mental limitations are not so severe and pervasive as

Plaintiff claims.  The Ninth Circuit Court of Appeals has held

that such a finding is appropriate.  Evidence of a claimant's

performance of work after the alleged onset of disability

undermines the claim of disabling symptoms.  Greger v. Barnhart,

464 F.3d 968, 972 (9th Cir. 2006).

The ALJ found that although Plaintiff claims he cannot focus

enough to do work and has poor attention and concentration, there

was evidence in the record that he was able to conduct research

independently and understand complex medical issues.  (AR at pp.

1141, 1433, 1471, 1733-34, 1921, 2233).  Plaintiff was able to

obtain medical care for himself in 2014 when he moved from

Illinois to New Mexico and to obtain care again when he returned

to Illinois months later.  (AR at p. 1153).

The ALJ found that Plaintiff's ability to obtain medications

from various providers and to conduct his own research about

available benefits was inconsistent with his testimony that he

was unable to work due to mental limitations and his inability to

get along with others.  (AR at pp. 1432-35, 40).  The ALJ cited

record evidence demonstrating that Plaintiff worked well with various office staff to obtain low-cost medications and interacted with staff in an appropriate and friendly manner. (AR at pp. 1433, 1805, 1806, 1823, 1824, 1860, 1864, 1873, 1878, 1889, 1891, 1898, 1900, 1903).

Despite his testimony that Plaintiff has poor memory and an inability to recall information, Plaintiff testified as to exactly how much money he was receiving in government benefits and recalled details about his medical insurance benefits. (AR at pp. 1468, 1480-81). The ALJ properly relied on evidence that Plaintiff was able to effectively treat his impairments when he consistently comported with treatment recommendations by his providers. (AR at pp. 1433-41, 2068, 2071, 2077, 2119). The ALJ is correct to look to unexplained or inadequately explained failures by the claimant to seek treatment and to follow a course of treatment prescribed by his own physicians. Tommasetti, 533 F.3d at 1039.

The ALJ properly recognized that Plaintiff showed marked improvement when he consistently took the medications prescribed by his physicians and he offered no legitimate reasons for his non-compliance. (AR at pp. 519, 710, 1275, 1437-38, 1440). See Fricke v. Astrue, 2012 WL 2395178, *7 (E.D. Wash. June 25, 2012) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). In situations where a treatment has been shown to be effective but the patient refuses to avail himself of the treatment offered, that fact alone allows a determination that the impairments that

could be so treated are not disabling.  Blackwell v. Colvin, 2016 WL 4702823, *5 (E.D. Cal. Sept. 7, 2016) (citing Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006)).

In addition to evidence that Plaintiff was able to engage in daily activities and take care of himself, the ALJ also relied on evidence that Plaintiff was able to provide caretaking for a friend who had cancer in 2016.  (AR at pp. 1441, 2113, 2122, 2125).  Plaintiff's ability to work as a caregiver undermines his testimony that he was unable to engage in any regular work.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009).

Plaintiff's testimony as to his participation in a wide range of daily activities supported the ALJ's finding that Plaintiff's impairments were not so severe that he could not work.  Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (finding that plaintiff's engagement in daily activities provided clear and convincing evidence for discounting the claimant's testimony regarding the severity of her symptoms); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ acknowledged that Plaintiff's daily activities reflected that there were some limitations in the Plaintiff's ability to work.  The ALJ incorporated the limitations into the residual functional capacity and did not err in rejecting the claimant's allegations of a totally debilitating impairment. Molina, 674 F.3d at 1113 (citing Turner v. Cmm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010)).

There was ample evidence cited by the ALJ that Plaintiff was
able to interact with others on a regular basis.  The record
describes Plaintiff's ability to live in shelters and follow
shelter rules, Plaintiff's ability to find housing with friends
and live with others, Plaintiff's ability to navigate complex
benefits programs in order to obtain treatment and medications
with offices in various locations, and Plaintiff's ability to not
only take care of himself and participate in daily activities,
but Plaintiff's ability to act as a caretaker for another.  The
ALJ properly declined to credit Plaintiff's subjective symptom
testimony because his testimony contradicts other evidence in the
record.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing
Fair, 885 F.2d at 603).

**B.    The ALJ Did Not Err In Giving Limited Weight To Some Of
       The Treating Physician's Findings**

The ALJ gave "very little weight" to the opinions of
treating psychiatrists Dr. Gerald M. Welch and Dr. Hayng-Sung
Yang from 2011 and 2012.  (AR at pp. 1439-40).

A treating physician's opinion is generally entitled to the
greatest weight because the treating physician is hired to
examine and treat the patient over an extended period of time and
has the best opportunity to assess the claimant.  Magallanes v.
Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Treating physicians
are "most able to provide a detailed, longitudinal picture of [a
claimant's] medical impairment(s)."  20 C.F.R. §§ 404.1527(c),

416.927(c).

An ALJ must state clear and convincing reasons that are
supported by substantial evidence in order to reject the
uncontradicted opinion of the treating physician.  Bayliss v.
Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject
a treating doctor's opinion if it is contradicted by another
doctor's opinion as long as the ALJ provides specific and
legitimate reasons that are supported by substantial evidence.
Id.  "Also, when evaluating conflicting medical opinions, an ALJ
need not accept the opinion of a doctor if that opinion is brief,
conclusory, and inadequately supported by clinical findings."
Id.

Here, the ALJ's reasons for giving limited weight to the
opinions of Dr. Welch and Dr. Yang are supported by substantial
evidence.

> 1.  **Dr. Yang's 2012 Letter Is Not Based On Any
>      Objective Medical Data Or Clinical Findings In The
>      Record And Was Inconsistent With Other Evidence In
>      The Record**

A physician's opinion can be properly rejected when the ALJ
finds that it was in the form of a checklist, lacks supporting
objective evidence, was contradicted by other statements in the
record, and was based on subjective descriptions.  Butler v.
Astrue, 773 F.Supp.2d 975, 980 (D. Or. 2011) (citing Batson v.
Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)).

The ALJ found that there is no objective basis to review Dr.

Yang's letter as there are no contemporaneous clinical findings, explanations, or substantive data to support the doctor's findings. (AR at p. 1439). Rather, the letter is based on the Plaintiff's own subjective complaints that the ALJ properly rejected. An ALJ evaluates a plaintiff's medical records by considering the basis for the physician's opinions. The ALJ gives greater weight to opinions that a physician explains and less to those that are unexplained. Molina, 674 F.3d at 1111-12.

Here, the ALJ gave little weight to Dr. Yang's letter because it was not supported by reliable evidence in the record. Dr. Yang's letter contained the conclusory opinion that "[Plaintiff] is unable to maintain employment at the present time due to the symptoms of Bi-Polar Disorder." (AR at p. 634). The letter is not dated, but it was submitted into the record January 2012. The letter does not describe the treatment history by Dr. Yang. There was no contemporaneous medical testing or objective findings by Dr. Yang to demonstrate the basis for his assessment that Plaintiff was unable to maintain any employment. The ALJ properly rejected Dr. Yang's opinion. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

The ALJ explained that there was little evidence in the record to support Dr. Yang's assessment. There was evidence that Plaintiff was hospitalized in March 2011 because he stopped

32

taking his medication completely and there was evidence of a visit in September 2011 when Plaintiff was found to have intact memory and appropriate mood and affect.  (AR at pp. 716, 1438).

The ALJ gave clear and convincing reasons for rejecting the numerous global assessment of functioning ("GAF") scores in the record.  The ALJ explained that the "score are afforded little weight as they are inherently subjective in nature, represent at best a snapshot of how the claimant was doing at a particular instance in time, usually on admission and discharge from a brief decompensatory episode, and are not reflective of the claimant's longitudinal level of functioning over the course of the period in question which is what the undersigned must assess."  (AR at p. 1443).

The ALJ relied on evidence from Plaintiff's treatment in subsequent years that showed Plaintiff had a normal mood and affect and showed normal attention, concentration, memory, and thought processes.  (AR at pp. 1129, 1154, 1921, 1924, 1927, 2223).  The ALJ also relied on Plaintiff's testimony that, despite Dr. Yang's assessment, Plaintiff was able to maintain work as a bell ringer in the 2010 and 2011 holiday seasons without impact on his mental health.  (AR at p. 1439).  This evidence outlined by the ALJ supports the decision to give little weight to Dr. Yang's opinion.  Batson, 359 F.3d at 1195.  The ALJ reasonably relied on the other record evidence to find Dr. Yang's opinion was inconsistent with the record.  20 C.F.R. § 404.1527(c)(4); Rollins, 261 F.3d at 856.

## 2. Dr. Welch's Findings Are Inconsistent With Other Evidence In The Record

The ALJ also gave little weight to Dr. Welch's June 2011 letter that stated, "It is my judgment that Mr. Rosenbaum, at this time, is unable to obtain or maintain gainful employment as a result of his bipolar disorder." (AR at pp. 633, 1439). The ALJ found Dr. Welch's letter was inconsistent with the same evidence the ALJ cited when evaluating Dr. Yang's letter submitted in January 2012. (AR at p. 1439). The ALJ also properly relied on conflicting evidence in the record that reflected the Plaintiff was able to maintain seasonal employment and was consistently cooperative, with normal mood and affect. (AR at pp. 587, 593, 1807, 1815, 1818, 1821, 1837, 1847, 1867, 1872, 1876, 1914, 1927).

The ALJ also assigned little weight to Dr. Welch's March 2012 check-the-box assessment. (AR at p. 1439). The three-page assessment checked various boxes without any clinical findings, data, or objective tests. (AR at pp. 635-37). The ALJ found the limitations provided in Dr. Welch's check-the-box assessment were inconsistent with Plaintiff's demonstrated abilities for both social interaction and maintaining a schedule. (AR at p. 1439).

The ALJ's conclusion is not erroneous. An opinion's failure to explain how limitations translate into specific functional restrictions is an appropriate basis for rejecting an opinion. Morgan, 169 F.3d at 601. The ALJ did not err in declining to credit Dr. Welch's standardized form where there were no

contemporaneous objective medical findings or evidence to support his conclusions. Dean v. Comm'r of Soc. Sec., 504 Fed. Appx. 563, 565 (9th Cir. 2013) (finding that the ALJ properly rejected the treating doctor's findings because he submitted a standardized form rather than objective medical findings).

The ALJ found that Dr. Welch's assessment was inconsistent with the Plaintiff's own testimony about his ability to perform activities of daily living and other evidence in the record. (AR at pp. 1432-33). The ALJ may properly discredit a treating physician's conclusions concerning the persistence and severity of Plaintiff's limitations when they conflict with Plaintiff's own testimony. Molina, 674 F.3d at 1112-13 (citing Morgan, 169 F.3d at 600)). In addition, the ALJ properly discredited the opinions that were conclusory, brief, and unsupported by the record as a whole or by objective medical findings. Batson, 359 F.3d at 1195.

The ALJ did not err in declining to credit Dr. Welch's opinion to the extent the evaluations were based on Plaintiff's subjective reporting. Dean, 504 Fed. Appx. at 565 (finding that the ALJ properly rejected the treating doctor's findings because the doctor appeared to rely primarily on subjective reporting).

The ALJ provided specific reasons for disagreement with Dr. Welch's findings as to Plaintiff's limitations. The ALJ explained that the record demonstrated that Plaintiff was routinely cooperative and had a greater ability to concentrate than Dr. Welch suggested. (AR at pp. 464, 587, 593, 710, 728,

1133, 1136, 1140-41, 1144, 1154, 1432-40, 1807, 1818, 1821, 1834, 1840, 1847, 1862, 1872, 1876, 1914, 1921, 2222-23, 2267).  The evidence throughout the relevant time period supported rejecting Dr. Welch's conclusions.

Dr. Welch and Dr. Yang's letters were provided in 2011 and 2012.  Since the date of their letters, Plaintiff demonstrated marked improvement in his mental health, behavior, mood, and affect when he followed his course of treatment prescribed by subsequent physicians.  The ALJ specifically considered that after Plaintiff returned from relocation in New Mexico in 2016, objective medical records from the Carle Foundation made findings of a "normal mood and affect" as well as normal behavior, judgment and thought content as of December 2016.  (AR at p. 1441).  The record demonstrates that Plaintiff was highly functional in 2016 such that he was able to provide caretaking duties for a friend suffering from cancer.  (Id.)

Beginning in 2017, Plaintiff was able to locate new housing, complete financial assistance paperwork, and obtain his medications consistently.  (Id.)  Continuing in 2017, Plaintiff began speech therapy and ongoing medication with Prozac and Lamicatal assisted the Plaintiff in maintaining an appropriate mood and affect.  (Id. at 1442).  The ALJ appropriately considered the more recent medical records from Plaintiff's treatment in 2016 and 2017 in finding that the 2011 and 2012 letters from Dr. Yang and Dr. Welch were entitled to limited weight.

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision.

**CONCLUSION**

The Commissioner of Social Security Administration's decision is **AFFIRMED.**

The Clerk of Court is Ordered to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: September 24, 2019, Honolulu, Hawaii.

Helen Gillmor
United States District Judge